1  RICHARD B. HOPKINS (SBN 190108)
   RHopkins@maynardcooper.com
2  MAYNARD COOPER & GALE LLP
   10100 Santa Monica Boulevard, Suite 550
3  Los Angeles, CA 90067
   Telephone:  310-596-4500
4
5  THOMAS W. THAGARD (AL Bar No. 2000-D62T)*
   tthagard@maynardcooper.com
6  JAMES C. LESTER (AL Bar No. 4477-M68L)*
   jlester@maynardcooper.com
7  S. REEVES JORDAN (NY Bar No. 5639315)*
   rejordan@maynardcooper.com
8  MAYNARD, COOPER & GALE, P.C.
   1901 Sixth Avenue North, Suite 1700
9  Birmingham, Alabama 35203
   Telephone: (205) 254-1000
10 *Pro Hac Vice Application Forthcoming

11 Attorneys for Defendant
   21st Mortgage Corporation
12
13              UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15 | KATHY TATICK, individually, and on | Case No.  **'23CV0108 DMS AGS** |
16 | behalf of other members of the general public similarly situated, | |
17 |                                Plaintiffs, | **DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL** |
18 |          vs. | |
19 | 21ST MORTGAGE CORPORATION, a Delaware corporation; and DOES 1 | |
20 | through 10, inclusive, | Complaint Filed:  November 18, 2022 |
21 |                                Defendants. | |
22
23
24
25
26
27
28

To the Clerk of the United States District Court for the Southern District of California and to Plaintiff Kathy Tatick and her attorneys of record:

**PLEASE TAKE NOTICE** that Defendant 21st Mortgage Corporation ("21st Mortgage") hereby files this Notice of Removal on the grounds set forth below.

1.     The state court action is removable to this Court, and this Court has jurisdiction over this civil action, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, as well as 28 U.S.C. §§ 1441(a) and 1453, because this is a putative class action involving more than 100 putative class members, the aggregate amount in controversy exceeds $5,000,000, and there is minimal diversity.

## I.    PLEADINGS AND PROCESS

2.     On or about November 18, 2022, Plaintiff Kathy Tatick commenced this putative class action by filing her Class Action Complaint in the Superior Court of the State of California, County of San Diego, titled *Kathy Tatick v. 21st Mortgage Corp. et al.*, Case No. 37-2022-00046802-CU-NP-CTL (the "Action").  *See generally* Class Action Complaint ("Complaint" or "Compl."), attached as Exhibit A to the Declaration of Richard B. Hopkins ("Hopkins Decl."), Exhibit 1 to this Notice of Removal.

3.     Plaintiff's Complaint asserts causes of action on behalf of Plaintiff and a putative class against Defendant 21st Mortgage and a fictitious set of additional Defendants, Does 1 through 10, for: (i) violations of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("Rosenthal Act" or "the Act"); and (ii) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").

DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL
Case No._____

4.      21st Mortgage was served with the Summons and Complaint on December 23, 2022.[1]

5.      Because San Diego County, California is located within the Southern District of California, this Notice of Removal is properly filed in this Court pursuant to 28 U.S.C. §§ 84(d), 1441, and 1446.[2]

## II.  CITIZENSHIP OF THE PARTIES

### A.  Citizenship of Plaintiff

6.      As alleged, Plaintiff Kathy Tatick is, and was at the time the Complaint was filed, domiciled in and a citizen of the State of California.[3]

### B.  Citizenship of Defendants

7.      21st Mortgage is, and was at the time the Complaint was filed, a Delaware corporation with its principal place of business in Knoxville, Tennessee.[4] Pursuant to 28 U.S.C. § 1332(c)(1), 21st Mortgage is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of California within the meaning of the Acts of Congress relating to the removal of cases. *See Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) ("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'").

8.      Plaintiff has not alleged the citizenships of the fictitious Defendants, Does 1 through 10, whom Plaintiff alleges on information and belief to be "the

[1] Hopkins Decl. ¶ 2.

[2] While filing this Notice of Removal, 21st Mortgage expressly preserves and does not waive any defense based on lack of personal jurisdiction or lack of venue. *See Buckelew v. Gore*, 2020 WL 4188166, at *6 n.6 (S.D. Cal. July 21, 2020) ("In removing a case, a [d]efendant does not waive challenges to personal jurisdiction, subject matter jurisdiction, venue, service of process, etc." (quotation omitted)). 21st Mortgage also does not waive and specifically preserves any and all other defenses applicable to the claims of the putative class members.

[3] Compl. ¶ 11.

[4] Declaration of Jeff Warkins ("Warkins Decl.") ¶ 2, Exhibit 2 to this Notice of Removal.

partners, agents, owners, shareholders, managers, or employees of 21st Mortgage Corporation at all relevant times."[5]

## III.   THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

9.      21st Mortgage is "the nation's largest manufactured home lender originating more than 1.3 billion of loans for new and previously owned homes. The company owns and services more than 180,000 mortgages with a value exceeding $9 billion."[6]

10.     Plaintiff filed this putative class action on behalf of "[a]ll persons who entered into a mortgage instrument to secure a debt owed on real property (including manufactured and mobile homes) that is, or was, serviced by Defendants at any time within four years prior to the filing of this complaint until the date of trial, and who received debt collection phone calls from Defendants" (the "Class").[7]

11.     The gravamen of Plaintiff's Complaint is that 21st Mortgage has engaged in unlawful debt collection practices in connection with its business of mortgage lending and servicing for manufactured homes.[8]

12.     Plaintiff specifically alleges that "Defendants have engaged and continue to intentionally and willfully engage in unlawful debt collection practices, including initiating repeated, annoying, and harassing communications to Plaintiff and other borrowers, purportedly in connection with the collection of mortgage payments."[9]

---

[5] Compl. ¶¶ 13–14.

[6] *See* 21st Mortgage Corporation, *About Us and Our Company History*, https://www.21stmortgage.com/web/21stSite.nsf/about-history.html (last visited Jan. 17, 2023).

[7] Compl. ¶ 35. Despite the fact that Plaintiff only alleges violations of California state law, Plaintiff does not appear to limit her putative class to California borrowers.

[8] Compl. ¶ 5.

[9] Compl. ¶ 19.

13.     Plaintiff further alleges that "Defendants' unlawful debt collection practices, which are intended to annoy and harass borrowers, have caused and continue to cause Plaintiff and other borrowers pain and suffering and emotional distress, in addition to costs incurred in responding to Defendants, including related attorney expenses and costs."[10]

14.     In her Complaint, Plaintiff, "on behalf of herself and all others similarly situated," seeks to recover "damages, penalties, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs."[11]

15.     With respect to her claim under the Rosenthal Act alleging unlawful debt collection practices, Plaintiff seeks to recover:

(a) "[A]ctual . . . damages," "including economic damages and pain and suffering";[12]

(b) "[S]tatutory damages";[13]

(c) "An award of attorneys' fees and costs";[14] and

(d) "[I]njunctive relief."[15]

16.     With respect to her claims under the UCL, Plaintiff seeks to recover "restitution of fees and interests and other benefits received by Defendants," "prejudgment interest," and "attorneys' fees and costs of suit."[16]

17.     CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants.  It "should be read 'with a strong preference that interstate class actions should be heard in a federal

---

[10] Compl. ¶ 21.

[11] Compl., Prayer for Relief ¶¶ 1–2.

[12] Compl., Prayer for Relief ¶ 7; Compl. ¶ 55.

[13] Compl., Prayer for Relief ¶ 7.

[14] Compl., Prayer for Relief ¶¶ 9–10.

[15] Compl., Prayer for Relief ¶ 8.

[16] Compl., Prayer for Relief ¶¶ 13, 15, 18, 20.

4

court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). "[T]he Supreme Court has advised 'that no antiremoval presumption attends cases involving CAFA.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 89); *see also Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1149 (S.D. Cal. 2018) (same); *Martinez v. Check 'N Go of Cal., Inc.*, 2016 WL 6103166, at *2 (S.D. Cal. Feb. 18, 2016) (same). Rather, "Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).

18.   Accordingly, CAFA expands federal jurisdiction over class actions, and expressly provides that class actions filed in state court are removable to federal court where: (a) the putative class contains at least 100 class members; (b) any member of the putative class is a citizen of a state different from that of any defendant; and (c) the aggregate amount in controversy for the putative class exceeds $5,000,000, exclusive of interest and costs.[17]   28 U.S.C. § 1332(d); *accord Singletary v. G6 Hospitality, LLC*, 2022 WL 2193111, at *2 (S.D. Cal. June 17, 2022).

19.   This suit satisfies CAFA's requirements for federal jurisdiction.   In addition, none of the exceptions to CAFA jurisdiction apply here.   28 U.S.C. § 1332(d).

---

[17] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to any relief.  21st Mortgage denies liability, denies Plaintiff is entitled to any relief, and denies that a class can be properly certified in this matter. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

5

DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL
Case No._____

### A.   The Putative Class Exceeds 100 Members.

20.   CAFA requires that the putative class consist of at least 100 persons.  28 U.S.C. § 1332(d)(5)(B).  That requirement is readily met here.

21.   Plaintiff asserts that "the class is estimated to be greater than one hundred (100) individuals."[18]  This assertion in Plaintiff's Complaint is sufficient to establish that the putative class exceeds 100 persons.  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) ("[T]he first paragraph of the complaint states that [plaintiff] is seeking to provide remedies for hundreds of affected consumers.  We agree with the district court that this was enough" to satisfy CAFA's numerosity requirement (quotation omitted)); *accord Dart Cherokee*, 574 U.S. at 89.

22.   Additionally, the Class is defined as "[a]ll persons who entered into a mortgage instrument to secure a debt owed on real property (including manufactured and mobile homes) that is, or was, serviced by Defendants at any time within four years prior to the filing of this complaint until the date of trial, and who received debt collection phone calls from Defendants."[19]  As averred in the attached Declaration of Jeff Warkins, in the four years prior to the filing of Plaintiff's Complaint on November 18, 2022, 21st Mortgage placed collection calls to more than 200 borrowers in California who were past due on their monthly payments for manufactured home loans secured by real property.[20]  By the terms of Plaintiff's definition of the Class, each of those borrowers is a putative class member.[21]

---

[18] Compl. ¶ 38(a).

[19] Compl. ¶ 35.

[20] Warkins Decl. ¶ 3.

[21] To be clear, 21st Mortgage preserves any and all defenses available to it based on the applicable statutes of limitations for Plaintiff's claims (and all other defenses that may be available).  However, the availability and merits of 21st Mortgage's defenses are immaterial to the determination of the amount Plaintiff has placed into controversy.  *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 773–74 (9th Cir. 2020) ("The district court erred in considering the merits of Harley-Davidson's [statute of limitations] affirmative defense to determine the amount in controversy."); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) ("[T]he strength

6

23.   Plaintiff's allegations, theories, and definition of the putative class establish that the putative class exceeds 100 persons.   Thus, the requirement of 28 U.S.C. § 1332(d)(5)(B) is satisfied.

**B.   Minimal Diversity Exists.**

24.   The second CAFA requirement is minimal diversity—at least one putative class member and at least one defendant must be citizens of different states. 28 U.S.C. § 1332(d)(2).

25.   Here, at least one putative class member is a citizen of the State of California, namely, Plaintiff Kathy Tatick.[22]   21st Mortgage is, and was at the time the Complaint was filed, a Delaware corporation with its principal place of business in Tennessee, and is thus a citizen of Delaware and Tennessee for diversity purposes.[23] Thus, the minimal diversity requirement is satisfied.   28 U.S.C. § 1332(d)(2).

**C.   The CAFA Amount in Controversy Requirement Is Satisfied.**

26.   CAFA's third and final requirement is that the aggregate amount in controversy exceed $5,000,000 for the putative class, exclusive of interest and costs.

27.   The Supreme Court has instructed that, in a notice of removal, the removing party seeking to invoke CAFA jurisdiction "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89 (emphasis added) (citing 28 U.S.C. § 1446(a)); *see also Bryant*, 284 F. Supp. 3d at 1149 (same).   "[A] removing defendant's notice of removal need not contain evidentiary submissions."   *Arias*, 936 F.3d at 922 (quotation omitted).   Rather, "[t]o avail itself of the federal forum, a defendant is required only to offer a 'short and plain statement of the grounds for removal.'"   *Cummings v. G6*

---

of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." (emphasis in original)).

[22] Compl. ¶ 11.

[23] Warkins Decl. ¶ 2.

1  *Hospitality LLC*, 2019 WL 1455800, at *1 (S.D. Cal. Apr. 2, 2019) (quoting 28 U.S.C.
2  § 1446(a)).

3          28.    An evidentiary showing by the defendant regarding the Court's
4  jurisdiction under CAFA is required only if the plaintiff subsequently "contests the
5  amount in controversy allegation."  *See Jauregui*, 28 F.4th at 992; *see also Dart*
6  *Cherokee*, 574 U.S. at 89 ("Of course, a dispute about a defendant's jurisdictional
7  allegations cannot arise until *after* the defendant files a notice of removal containing
8  those allegations." (emphasis in original)).  If the defendant's jurisdictional
9  allegations are challenged, "both sides submit proof and the court decides, by a
10 preponderance of the evidence, whether the amount-in-controversy requirement has
11 been satisfied." *Jauregui*, 28 F.4th at 992 (quotation omitted).  Even then, the Ninth
12 Circuit has explained that the defendant need only "plausibly show that it is
13 reasonably possible that the potential liability exceeds $5 million." *Greene*, 965 F.3d
14 at 772.  Further, "the defendant's showing on the amount in controversy may rely on
15 reasonable assumptions." *Arias*, 936 F.3d at 922; *see also Jauregui*, 28 F.4th at 993
16 (noting that "the removing party must be able to rely on a chain of reasoning that
17 includes assumptions" in establishing the amount in controversy (quotation omitted)).

18         29.    The ultimate inquiry is what amount is put in controversy by the
19 allegations in the plaintiff's complaint, not what the plaintiff or the putative class
20 members will actually be awarded.  "The amount in controversy represents only the
21 amount at stake in the underlying litigation, not the likely liability." *Greene*, 965 F.3d
22 at 774 (quotation omitted).  "'Amount at stake' does not mean likely or probable
23 liability; rather, it refers to possible liability." *Id.* at 772.  "In that sense, the amount
24 in controversy reflects the *maximum* amount the plaintiff could reasonably recover."
25 *Arias*, 936 F.3d at 927 (emphasis in original).

26
27
28

DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL
Case No._____

30.    In her Complaint, Plaintiff asserts a claim on behalf of the putative class for unlawful debt collection practices under California's Rosenthal Act.[24]    As explained below, 21st Mortgage's potential liability to the putative class under the Rosenthal Act exceeds $5,000,000.

31.    The Rosenthal Act provides for the availability of actual damages, statutory damages, and attorney's fees against a defendant who is found liable under the Act.  *See* Cal. Civ. Code § 1788.30.  Separately, the Rosenthal Act also makes the "remedies" of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), available to the plaintiff in a Rosenthal Act action.  *See* Cal. Civ. Code § 1788.17 (providing that "every debt collector collecting or attempting to collect a consumer debt . . . shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code"); *see also Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 618 (S.D. Cal. 2011) ("Title 15 U.S.C. § 1692k, a provision of the Fair Debt Collection Practices Act . . . applies to Plaintiff's claim under the Rosenthal Act by virtue of California Civil Code § 1788.17.").  As a result of this incorporation by reference of the FDCPA's remedies, "class actions may proceed" under the Rosenthal Act and the remedies that are available in an FDCPA class action may also be available in a Rosenthal Act class action.  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1066 (9th Cir. 2011).

32.    The class-wide remedies that may be available in a Rosenthal Act action include "actual damages" for the injured class members.  *See Aho*, 277 F.R.D. at 618 (noting that under the Rosenthal Act, "for class action claims, the plaintiffs may recover" other types of damages "*in addition to actual damages*" (emphasis added)); *Corvello v. Wells Fargo Bank N.A.*, 2016 WL 3995909, at *5 (N.D. Cal. Jan. 29, 2016) (noting that under the Rosenthal Act, "statutory damages are not the sole source of damages available to the class members—they may be able to recover actual

---

[24] Compl. ¶¶ 39–56.

damages as well").  The actual damages available in a Rosenthal Act action may include damages for emotional distress.  *See, e.g.*, *Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215, 1218 (S.D. Cal. 2008) (awarding $90,000 in actual damages in a Rosenthal Act action "to compensate Plaintiff for the harassment, abuse, emotional distress, and economic hardship suffered"); *cf. Rouse v. Law Offices of Rory Clark*, 2008 WL 11337375, at *4 (S.D. Cal. May 27, 2008) ("[T]he Ninth Circuit has recognized that claims for emotional distress are actual damages, properly recoverable under the FDCPA." (citing *Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982))).

33.    The class-wide remedies that may be available in a Rosenthal Act action also include statutory damages equivalent to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector."   15 U.S.C. § 1692k(a)(2)(B); *see also Gonzales*, 660 F.3d at 1065, 1068 (noting that these class-wide statutory damages are available in a Rosenthal Act action).

34.    Attorney's fees are also available to the prevailing party in a Rosenthal Act action.  *See* Cal. Civ. Code § 1788.30(c) ("Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor."); *see also Norton v. LVNV Funding, LLC*, 2022 WL 562831, at *9–12 (N.D. Cal. Feb. 24, 2022) (awarding attorney's fees in a class action settlement involving claims under the FDCPA and the Rosenthal Act).

35.    In her Complaint, Plaintiff seeks all three of these types of recoveries— *i.e.*, actual damages, statutory damages, and attorney's fees—on behalf of the putative class.[25]

36.    In particular, Plaintiff seeks actual damages for the class for what she alleges to be significant emotional distress experienced by herself and the putative class members.  Plaintiff specifically alleges that "Defendants' repeated harassing and annoying phone calls have caused Plaintiff, and continue to cause other borrowers, to

---

[25] *See* Compl., Prayer for Relief ¶¶ 7–9.

suffer loss of appetite, frustration, fear, anger, anxiety, stress, sleeplessness, and the like, which have in turn affected their ability to work and earn a living."[26]  "Plaintiff, on behalf of herself and all other similarly situated persons who comprise the class . . . seeks actual and/or compensatory damages" to to account for the emotional distress allegedly experienced by herself and the putative class members.[27]

37.   By seeking actual damages for emotional distress and other purported injuries to herself and the class members along with statutory damages and attorney's fees, Plaintiff has placed over $5,000,000 in potential liability, exclusive of interest and costs, at stake.   Indeed, under three separate methods of common-sense calculation, it is readily apparent that the potential damages for the putative class exceed $5,000,000.

38.   *First*, the amount in controversy in this action clearly exceeds $5,000,000 based on Plaintiff's own characterizations of the value of the putative class members' claims.  In her Prayer for Relief, Plaintiff apparently claims "damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000)" for herself alone to account for 21st Mortgage's purported violations of the Rosenthal Act.[28]  Further, Plaintiff alleges that her "claims . . . are typical of all class members as demonstrated herein."[29]  Because Plaintiff pleads that her claims are typical of the putative class members' claims, it is reasonable to assume that in excess of $25,000 is at stake with respect to each individual putative class member.  *See Arias*, 936 F.3d at 922 ("[T]he defendant's showing on the amount in controversy may rely on reasonable assumptions."); *cf.*

---

[26] Compl. ¶ 21.

[27] Compl. ¶ 21.  In addition to emotional-distress damages, Plaintiff also seeks actual damages for herself and the class members to account for (1) lost income and (2) cell phone charges.  Compl. ¶ 28.

[28] Compl., Prayer for Relief ¶ 8; *see also* Prayer for Relief ¶¶ 1–2.

[29] Compl. ¶ 38(b).

11

*Boyd v. NYCTL 1996-1 Tr.*, 697 F. App'x 720, 722–23 (2d Cir. 2017) (noting that, where plaintiffs "alleged that the named class members were overcharged by thousands of dollars, that there were thousands of other class members, *and that the claims of the named plaintiffs were typical of the claims of the other class members*," "[a]rithmetic disprove[d] [the plaintiffs'] argument" that "they could not claim at least $5 million in damages" sufficient to satisfy CAFA's jurisdictional requirements (emphasis added)).

39.    Moreover, as averred in the attached Declaration of Jeff Warkins, during the class period, 21st Mortgage placed collection calls to more than 200 borrowers in California who were past due on their monthly payments for manufactured home loans secured by real property.[30]  Accordingly, the putative class appears to have more than 200 members.  If, as Plaintiff pleads, each putative class member's claim is worth in excess of $25,000, simple math indicates that the claims of the overall class are worth in excess of $5,000,000.[31]

40.    **Second**, even putting aside Plaintiff's own characterizations of the value of the putative class members' claims, the value of prior judgments issued in past debt-collection actions in which the plaintiffs sought and were awarded emotional-distress damages similar to those sought in this case establishes that the amount in controversy exceeds $5,000,000.  The Ninth Circuit has indicated that, in the CAFA context, a defendant can establish that the amount in controversy exceeds $5,000,000 by citing to prior judgments issued in cases involving the same or a similar cause of action.  *See Greene*, 965 F.3d at 772 (in class action involving claim for punitive damages, holding that "[o]ne way to meet th[e] burden" of establishing that a recovery in excess of $5,000,000 is "reasonably possible" is "to cite a case based on the same or a similar statute in which the jury or court awarded punitive damages based on the

[30] Warkins Decl. ¶ 3.

[31] $25,000 x 200 = $5,000,000.

12

punitive-compensatory damages ratio relied upon by the defendant in its removal notice"); *cf. Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (in case involving removal under traditional diversity jurisdiction rules, holding that "the district court properly considered . . . emotional distress damage awards in similar age discrimination cases in Washington" in "determining the amount in controversy").

41.     In numerous past actions brought under either the Rosenthal Act or the FDCPA—the remedies for which, as discussed above, are available in an action brought under the Rosenthal Act—judges and juries have awarded emotional-distress damages in excess of $25,000 per plaintiff, and in several instances well above $50,000 per plaintiff.  *See Myers*, 543 F. Supp. 2d at 1218 (in case involving claims under the Rosenthal Act and the FDCPA, awarding $90,000 in actual damages "to compensate Plaintiff for the harassment, abuse, emotional distress, and economic hardship suffered by Plaintiff" and noting that "an award of $90,000 . . . is commensurate with awards in other similar cases"); *Morisaki v. Davenport, Allen & Malone, Inc.*, 2010 WL 3341566, at *2–5 (E.D. Cal. Aug. 23, 2010), *findings and recommendations adopted*, Doc. 14, No. 2:09-cv-00298 (E.D. Cal. Sept. 16, 2010) (in case involving claims under the Rosenthal Act and the FDCPA, awarding $73,000 in actual damages to compensate plaintiff for injuries suffered "as a result of defendant's illegal collection communications in the form of humiliation, anger, anxiety, emotional distress, fear, frustration, embarrassment, and other negative emotions").[32]

---

[32] *See also Brablec v. Paul Coleman & Assocs., P.C.*, 2010 WL 235062, at *2 (E.D. Cal. Jan. 21, 2010), *findings and recommendations adopted*, 2010 WL 11698195 (E.D. Cal. Mar. 10, 2010) (awarding $25,000 in actual damages in FDCPA action to compensate plaintiff for "heart problems, high blood pressure, sleep loss, fatigue, loss of concentration, poor work performance, stress, anxiety, depression, and fear of leaving his house" suffered "as a result of defendant's harassing phone calls"); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5–11 (E.D. Cal. June 26, 2009), *findings and recommendations adopted*, Doc. 83, No. 1:08-cv-00690 (E.D. Cal. Sept. 1, 2009) (in case involving claims under the Rosenthal Act and the FDCPA, awarding $25,000 in actual damages to compensate for "severe emotional distress as a result of Defendant's actions"); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (upholding jury award of $85,000 in actual damages in FDCPA action to compensate for "emotional distress and relational injuries"); *Panahiasl v.*

13

42.     Given Plaintiff's allegations of serious emotional distress purportedly suffered by herself and the putative class members as a result of 21st Mortgage's debt-collection practices, and based on the value of these numerous prior judgments issued in other debt-collection actions, it is clear that the potential damages available to the more than 200 putative class members in this action exceed $5,000,000.

43.     *Third*, the amount in controversy in this action clearly exceeds $5,000,000 based solely on the value of past judgments in Rosenthal Act and FDCPA cases multiplied by the size of the putative class as pleaded in Plaintiff's Complaint. As established in the attached Declaration of Jeff Warkins and as discussed above, the putative class in this action appears to have more than 200 members.[33]   However, even putting aside this evidence of the putative class size, Plaintiff pleads in her Complaint that "the class is estimated to be greater than one hundred (100) individuals."[34]   In several cases, juries and courts have awarded actual damages in excess of $50,000 per plaintiff in Rosenthal Act and FDCPA actions to compensate for emotional distress suffered as a result of unlawful debt collection activities.  *See Myers*, 543 F. Supp. 2d at 1218 ($90,000 in emotional-distress damages under Rosenthal Act and FDCPA); *Morisaki*, 2010 WL 3341566, at *2–5 ($73,000 in emotional-distress damages under Rosenthal Act and FDCPA); *Nelson*, 522 F. Supp. 2d at 1239 ($85,000 in emotional-distress damages under FDCPA).  Thus, simple math again indicates that, even under Plaintiff's own pleading regarding the size of the putative class, the claims of the overall class are worth in excess of $5,000,000.[35]

---

*Gurney*, 2007 WL 738642, at *1–2 (N.D. Cal. Mar. 8, 2007) (awarding $50,000 in actual damages to one plaintiff and $10,000 to a second plaintiff in FDCPA action to compensate for "emotional distress" suffered as a result of "abusive debt collection practices").

[33] Warkins Decl. ¶ 3; *see supra* ¶41.

[34] Compl. ¶ 38(a).

[35] $50,000 x 100 = $5,000,000.

DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL
Case No._____

44. Accordingly, under three separate common-sense methods of calculation, it is clear that the damages at stake for the putative class members in this action exceed $5,000,000.[36]

45. Finally, in her Complaint, Plaintiff "alleges, on information and belief, that the aggregate amount in controversy for the proposed class, including injunctive relief and attorneys' fees requested by Plaintiff, is less than five million dollars ($5,000,000), exclusive of interest and costs."[37]  However, as discussed above, this assertion is contradicted both by 21st Mortgage's plausible allegations that the amount-in-controversy requirement is met and by several of Plaintiff's own allegations.  *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (noting that, even where "the complaint alleges damages below the jurisdictional minimum," CAFA jurisdiction is determined "by aggregating all potential class members' individual claims" and "look[ing] beyond the complaint to determine whether the putative class action meets the jurisdictional requirements" (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594–95 (2013))).

46. Plaintiff does not and cannot allege that the putative class waives the right to seek recovery in excess of $5,000,000.  Such a waiver would have no "legal effect."  *See Rodriguez*, 728 F.3d at 978 (noting that the Supreme Court has "held that a lead plaintiff of a putative class could not foreclose a defendant's ability to establish

---

[36] Further, the second and third methods of calculation set out above based on prior judgments issued in Rosenthal Act and FDCPA cases take into account only prior awards for actual damages and not available statutory damages and attorney's fees. In this case, Plaintiff seeks all three types of recoveries, which raises the amount in controversy higher still.  *See* Compl., Prayer for Relief ¶¶ 7–9; 15 U.S.C. § 1692k(a)(2)(B) (providing for class-wide statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"); Cal. Civ. Code § 1788.30(c) (providing for "[r]easonable attorney's fees" under the Rosenthal Act); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A]ttorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy.").

[37] Compl. ¶ 7.

15

1    the $5 million amount in controversy by stipulating prior to class certification that the

2    amount in controversy is less than $5 million" (citing *Knowles*, 568 U.S. at 590)).

3        47.    For all the foregoing reasons, the $5,000,000 CAFA amount in

4    controversy requirement is satisfied in this case.[38]   *See* 28 U.S.C. §§ 1332(d)(2),

5    1332(d)(6).

6        **D.    The Exceptions to CAFA Jurisdiction Do Not Apply.**

7        48.    CAFA provides two mandatory exceptions and one discretionary

8    exception to the application of federal jurisdiction.  *See* 28 U.S.C. § 1332(d)(3)–(4).

9    In this case, it is clear that no exception applies.  Each CAFA exception requires, as a

10   starting point, that the "primary defendants" are citizens of the forum state or that

11   "significant relief" is sought from a citizen of the forum state.  *See* 28 U.S.C.

12   § 1332(d)(3)–(4) (providing that local controversy CAFA exception requires that

13   "significant relief" be sought from an in-state defendant, and that home state and

14   discretionary CAFA exceptions require that all "primary defendants" be resident

15   defendants).  When determining citizenship under CAFA, "a corporation shall be

16   deemed to be a citizen of every State and foreign state by which it has been

17   incorporated and of the State or foreign state where it has its principal place of

18   business."  28 U.S.C. § 1332(c)(1).  Therefore, 21st Mortgage is not a citizen of

19   California for purposes of CAFA.  *See supra* ¶7.

20       49.    Nonresident defendant 21st Mortgage is the only named defendant in this

21   action and is the primary defendant against whom Plaintiff seeks significant relief.

22   The other defendants, Does 1 through 10, are fictitious parties about whom Plaintiff

23   has pleaded no specific factual allegations.[39]

24

25   _____

26   [38] Moreover, the calculations set out above do not take into account the potential
     remedies available to the putative class under the UCL and are based solely on the
27   amount in controversy for the putative class members' Rosenthal Act claims.
     [39] *See* Compl. ¶¶ 13–15.

28

50.     Accordingly, because the CAFA prerequisites are met and none of the exceptions apply, this civil action is properly removable under CAFA.

**IV.    TIMELINESS OF REMOVAL**

51.     Defendant 21st Mortgage was served with the Summons and Complaint on December 23, 2022, *see supra* at ¶ 4, and this Notice of Removal is timely filed with this Court within thirty (30) days of that date.

52.     Defendants have sought no similar relief with respect to this matter.

**V.     ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

53.     Removal to this district is proper under 28 U.S.C. § 1446(a) because this district and division embrace the place in which the removed action has been pending.

54.     So far as 21st Mortgage is aware, no further proceedings occurred in this Action prior to 21st Mortgage filing this Notice of Removal.

55.     A Notice of Filing of Notice of Removal, with a copy of the Notice of Removal attached, will be filed promptly in the Superior Court of the State of California, County of San Diego, in accordance with the provisions of 28 U.S.C. § 1446(d).

56.     Written notice of the filings of this Notice of Removal will be given to the adverse party as required by law.

57.     For all the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. §§ 1332, 1441(a), and 1453.

58.     In the event that questions should arise with regard to the propriety of the removal of this Action, 21st Mortgage respectfully requests the opportunity to present a brief and oral argument in support of its positions expressed herein.

**WHEREFORE**, Defendant 21st Mortgage hereby gives notice that all further proceedings in this matter shall take place in the United States District Court for the Southern District of California, unless and until held otherwise by that Court.

1

2
DATED:  January 20, 2023                    MAYNARD COOPER & GALE LLP

3
                                       By:  */s/ Richard B. Hopkins*
4                                           RICHARD B. HOPKINS
                                            THOMAS W. THAGARD
5                                           JAMES C. LESTER
                                            S. REEVES JORDAN
6                                           Attorneys for Defendant
                                            21st Mortgage Corporation
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**TABLE OF CONTENTS**

| Document Title | Exhibit # | Page No. |
|---|---|---|
| Complaint w/ Exhibit A | Exhibit 1 | 21 |
| Declaration of Jeff Warkins ISO Defendant's Notice of Removal | Exhibit 2 | 42 |

# Exhibit 1

EXHIBIT 1
20

Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Brandon K. Brouillette (SBN 273156)
Brandon.Brouillette@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Kathy Tatick

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/18/2022** at 03:57:32 PM

Clerk of the Superior Court
By Erika Engel,Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| KATHY TATICK, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiff,<br><br>     vs.<br><br>21ST MORTGAGE CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.:   37-2022-00048802-CU-NP-CTL<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violation of the Rosenthal Fair Debt Collection Practices Act (California Civil Code §§ 1788, *et seq*.);<br>(2) Violation of California Business & Professions Code §§ 17200, *et seq*. (Unlawful Business Practices); and<br>(3) Violation of California Business & Professions Code §§ 17200, *et seq*. (Unfair Business Practices)<br><br>**Jury Trial Demanded** |

1    Plaintiff Kathy Tatick, individually and on behalf of all other members of the public

2    similarly situated, alleges as follows:

3                              **NATURE OF THE ACTION**

4        1.      Plaintiff Kathy Tatick ("Plaintiff") brings this action on behalf of California

5    residents who have been subjected to unlawful debt collection practices by 21st Mortgage

6    Corporation ("Defendants"). Defendants, in the course of servicing home mortgages, have a

7    practice of systematically, repeatedly, and harassingly contacting borrowers, such as Plaintiff, in

8    an attempt to collect mortgage installment payments, in violation of the Rosenthal Fair Debt

9    Collection Practices Act, California Civil Code section 1788, *et seq.* (the "Rosenthal Act").

10   Section 1788.17 of the Rosenthal Act expressly subjects Defendants, when acting as debt

11   collectors, to comply with the provisions of sections 1692b to 1692j of Title 15 of the United

12   States Code. Defendants' conduct also constitutes an unfair business practice under California's

13   Unfair Competition Law, Business & Professions Code sections 17200, *et seq.*

14       2.      This is a putative class action brought under California Code of Civil Procedure

15   section 382, which seeks damages and restitution, including interest thereon, injunctive and

16   other equitable relief, and attorneys' fees and costs on behalf of Plaintiff and all other California

17   residents and mortgagors who have been subjected to Defendants' unlawful debt collection

18   practices and unfair business practices.

19       3.      Defendant 21ST MORTGAGE CORPORATION is a full-service lender and

20   servicer specializing in manufactured and mobile home mortgage loans. Defendant 21ST

21   MORTGAGE CORPORATION services consumer home loans of manufactured and mobile

22   home mortgagors (or borrowers) across the country, including in California.

23       4.      A major component of Defendants' mortgage business entails collecting and

24   processing monthly installment payments from borrowers. Defendants are "debt collector[s],"

25   as defined by the Rosenthal Act. Cal. Civ. Code, § 1788.2(c); *Davidson v. Seterus, Inc.*, 21 Cal.

26   App. 5th 283, 298, 304 (2018) (holding that the Rosenthal Act's definition of "debt collector"

27   applied to a mortgage servicer engaged in debt-collection practices to obtain repayment of a

28   mortgage debt). Defendants are in the business of collecting a debt from Plaintiff and other

1  borrowers that qualifies as a "consumer debt," as defined by the Rosenthal Act, California Civil

2  Code, section 1788.2(f).  Indeed, Defendants have included the following disclosure in

3  correspondence sent to Plaintiff and other borrowers: "This is an attempt to collect a debt and

4  any information obtained will be used for that purpose."  Attached hereto as Exhibit A, and

5  incorporated herein by reference, is an example of such correspondence, dated May 21, 2019.

6      5.      Defendants have engaged, and continue to engage, in unlawful debt collection

7  practices in connection with their business of lending and servicing home loan mortgages.

8  These practices include, but are not limited to, repeatedly making annoying and/or harassing

9  phone calls to borrowers to collect mortgage payments, and persisting even when borrowers

10  request them to stop.

11      6.      Defendants' unlawful debt collection practices have caused Plaintiff and other

12  borrowers substantial harm, including emotional distress and economic losses.  Plaintiff, on

13  behalf of herself and all other similarly situated persons described below, seeks statutory

14  penalties, actual and/or compensatory damages, restitution, equitable relief, costs and expenses

15  of litigation, attorneys' fees, and all other available relief.

16                          **JURISDICTION AND VENUE**

17      7.      This class action is brought pursuant to California Code of Civil Procedure

18  section 382.  The damages, restitution, and penalties sought by Plaintiff exceed the minimal

19  jurisdiction limits of the Superior Court and will be established according to proof at trial.  The

20  amount in controversy for Plaintiff, including her claim for injunctive relief and attorneys' fees,

21  is less than seventy-five thousand dollars ($75,000).  Additionally, Plaintiff alleges, on

22  information and belief, that the aggregate amount in controversy for the proposed class,

23  including injunctive relief and attorneys' fees requested by Plaintiff, is less than five million

24  dollars ($5,000,000), exclusive of interests and costs.  Plaintiff reserves the right to seek a larger

25  amount based on new and different information uncovered in her investigation of her claims and

26  during discovery.

27      8.      This Court has jurisdiction over this action pursuant to the California

28  Constitution, Article VI, section 10, which grants the Superior Court "original jurisdiction in all

1   causes except those given by statute to other courts." The statutes under which this action is

2   brought do not specify any other basis for jurisdiction.

3       9.     This Court has jurisdiction over Defendants because, upon information and

4   belief, Defendants are either citizens of California, have sufficient minimum contacts in

5   California, or otherwise intentionally avail themselves of the California market so as to render

6   the exercise of jurisdiction over them by the California courts consistent with traditional notions

7   of fair play and substantial justice.

8       10.    Venue is proper in this Court because Defendants are non-California citizens and

9   have their principal place of business in Tennessee, and because they have not filed a statement

10  with the California Secretary of State designating a county in which they maintain a principal

11  place of business in accordance with California Corporations Code sections 16959 and 18200.

12  Cal. Code Civ. P. § 395.2. Thus, Defendants have no right to any particular venue and Plaintiff

13  may file this complaint in any county in California. *See Juneau Spruce Corp. v. International*

14  *Longshoremen's & Warehousemen's Union*, 37 Cal.2d 760, 763-764 (1951); *see also, Easton v.*

15  *Sup.Ct. (Schneider Bros., Inc.)*, 12 Cal. App. 3d 243, 246-247 (1970). Cal. Code Civ. P. §

16  395.5.

17      **THE PARTIES**

18      11.    Plaintiff Kathy Tatick is a resident of Lompoc, in Santa Barbara County,

19  California.

20      12.    21ST MORTGAGE CORPORATION was and is, upon information and belief, a

21  Delaware corporation engaged in commercial transactions throughout this county, the State of

22  California, and various states in the United States of America.

23      13.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein

24  under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the

25  complaint and serve such fictitiously named Defendants once their names and capacities

26  become known.

27      14.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10

28  are the partners, agents, owners, shareholders, managers, or employees of 21ST MORTGAGE

1    CORPORATION at all relevant times.

2        15.     Plaintiff is informed and believes, and thereon alleges, that each and all of the

3    acts and omissions alleged herein were performed by, or are attributable to, 21ST MORTGAGE

4    CORPORATION and/or DOES 1 through 10 (collectively, "Defendants" or "21ST

5    MORTGAGE"), each acting as the agent, employee, alter ego, and/or joint venturer of, or

6    working in concert with, each of the other co-Defendants and was acting within the course and

7    scope of such agency, employment, joint venture, or concerted activity with legal authority to

8    act on the others' behalf. The acts of any and all Defendants were in accordance with, and

9    represent, the official policy of Defendants.

10        16.     At all relevant times, Defendants, and each of them, ratified each and every act or

11    omission complained of herein. At all relevant times, Defendants, and each of them, aided and

12    abetted the acts and omissions of each and all the other Defendants in proximately causing the

13    damages herein alleged.

14        17.     Plaintiff is informed and believes, and thereon alleges, that each of said

15    Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

16    omissions, occurrences, and transactions alleged herein.

17                           **GENERAL ALLEGATIONS**

18        18.     Defendants are "the nation's largest manufactured home lender originating more

19    than $1.3 billion of loans for new and previously owned homes. The company owns and

20    services more than 180,000 mortgages with a value exceeding $9 billion."[1]

21        19.     Defendants have engaged and continue to intentionally and willfully engage in

22    unlawful debt collection practices, including initiating repeated, annoying, and harassing

23    communications to Plaintiff and other borrowers, purportedly in connection with the collection

24    of mortgage payments.

25    ///

26

27      [1] *See* 21st Mortgage Corporation, "About Us | Company History | 21st Mortgage

   Corporation", https://www.21stmortgage.com/web/21stsite.nsf/about-history.html (last visited

28    Oct. 19, 2022).

CLASS ACTION COMPLAINT

EXHIBIT 1

20.    Indeed, Defendants have a class-wide policy and practice of repeatedly calling borrowers to harass and/or annoy them, purportedly to collect mortgage installment payments.

21.    Defendants' unlawful debt collection practices, which are intended to annoy and harass borrowers, have caused and continue to cause Plaintiff and other borrowers pain and suffering and emotional distress, in addition to costs incurred in responding to Defendants, including related attorney expenses and costs.  Defendants' repeated harassing and annoying phone calls have caused Plaintiff, and continue to cause other borrowers, to suffer loss of appetite, frustration, fear, anger, anxiety, stress, sleeplessness, and the like, which have in turn affected their ability to work and earn a living.  Plaintiff, on behalf of herself and all other similarly situated persons who comprise the class described below, seeks actual and/or compensatory damages, restitution, statutory penalties, equitable relief, costs and expenses of litigation, attorneys' fees, and all other relief available.

22.    Defendants began servicing Plaintiff's mortgage in or around December 2017. In or around April 2019, Defendants began calling Plaintiff on her cellular phone 10 to 15 times per day, every day or every other day, demanding that she pay that month's mortgage payment, even though, on information and belief, she had made two mortgage payments in or around April 2019 to cover the following month's payment.  If Plaintiff did not answer her cellular phone, rather than leaving a voicemail message, Defendants would repeatedly call and hang up in 5- to 10-minute intervals until Plaintiff answered her phone.  When Plaintiff did answer Defendants' calls, Defendants would berate Plaintiff for being delinquent on her account. Defendants would belittle and intimidate Plaintiff during these phone calls, calling her "broke," a "loser," telling her to "go get a job" and to borrow money from her parents, among other demeaning and belittling comments.  Defendants also annoyed and harassed Plaintiff by deliberately calling at inconvenient times, for example, as early as 7:30 a.m.  Plaintiff was often reduced to tears from the frustration and stress of Defendants' harassing phone calls.

23.    Defendants also called Plaintiff's home phone number and left voicemail messages every day or every other day.  For example, Defendants left voicemails for Plaintiff on a near daily basis from April 2019 through July 2019.  In April 2019, Defendants left Plaintiff

1    voicemails on the 17th, 18th, 19th, 22nd, 23rd, 25th, and 26th.  In May 2019, Defendants left

2    Plaintiff voicemails on the 6th, 7th, 9th, 10th, 15th, 16th, 17th, 18th, 20th, 22nd, 23rd, and 28th.

3    In June 2019, Defendants left Plaintiff voicemails on the 13th, 14th, 17th, 19th, 21st, 24th, 25th,

4    26th, and 27th.  In July 2019, Defendants left Plaintiff voicemails on the 10th, 11th, 25th, and

5    26th.

6            24.      Plaintiff repeatedly asked Defendants via phone and email to stop calling and

7    harassing her, and also informed them on several occasions that she could not be on the phone

8    for various reasons such as having undergone a recent surgery and being busy at work.

9            25.      On or around July 26, 2019, Defendants issued Plaintiff a Notice of Default that

10   stated Plaintiff owed $1,439.15 for June 2019 and July 2019 installments including late charges,

11   and that she could cure the default by sending a cashier's check or money order for that amount

12   by September 9, 2019.

13           26.      On August 8, 2019, Plaintiff emailed Defendants that she had already paid $650

14   towards the default and would pay the remaining $790 on August 30, 2019 (before the

15   September 9, 2019 deadline) to cure the default.  That same day, Defendants' representative,

16   Allyson Hillard, confirmed via email that Defendants had received Plaintiff's payment of $650

17   for June 2019 and that the amount remaining to cure the Notice of Default was $789.15.  On

18   August 28, 2019, twelve days before the due date stated on the Notice of Default, Plaintiff

19   authorized a payment of $800 to Defendants—more than enough to cure the default and bring

20   her account up to date.  Nevertheless, Defendants' representatives called and emailed Plaintiff

21   on August 28, 2019, August 29, 2019, and September 5, 2019, demanding that she call them

22   back and make plans to bring her account up to date.

23           27.      Plaintiff notified Defendants numerous times—both over the phone and in

24   writing—that she had already timely paid the full monthly installments due and requested that

25   Defendants stop making harassing calls to her.  On information and belief, Defendants

26   intentionally and willfully ignored Plaintiff's requests, and instead continued to make harassing

27   phone calls to Plaintiff.

28   ///

CLASS ACTION COMPLAINT

EXHIBIT 1

28.     As a result of Defendants' intentional, willful, and unlawful debt collection practices, Plaintiff suffered emotional distress and incurred monetary damages, including, but not limited to, cellular phone charges.  In addition, Plaintiff spent many hours each month sending numerous emails asking Defendants to stop contacting her, speaking to Defendants on the phone, and otherwise dealing with Defendants' harassing treatment.  Plaintiff makes deliveries for work and had to use her regular business hours to deal with the harassment by Defendants, and, as a result, suffered loss of income.

29.     The California Rosenthal Fair Debt Collection Practices Act, California Civil Code sections 1788, *et seq.* (the "Rosenthal Act"), was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."  Cal. Civ. Code § 1788.1(b).

30.     The Rosenthal Act defines the term "debt collector" to mean "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).

31.     Section 1788.17 of the Rosenthal Act mandates that every debt collector collecting or attempting to collect a consumer debt "shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

32.     Defendants' conduct violated the Rosenthal Act in multiple ways, including, without limitation, violating sections 1788.11(d) and (e), by "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating by telephone . . . with the debtor with such frequency as to be unreasonable and to constitute a harassment to the debtor under the circumstances."

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on her own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under California Code of Civil Procedure section 382.

///

34.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

35.     Plaintiff's proposed class consists of and is defined as:

> All persons who entered into a mortgage instrument to secure a debt owed on real property (including manufactured and mobile homes) that is, or was, serviced by Defendants at any time within four years prior to the filing of this complaint until the date of trial, and who received debt collection phone calls from Defendants.

36.     Plaintiff reserves the right to redefine the above Class and add subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

37.     There are common questions of law and fact as to the class members that predominate over questions affecting only individual members, including, but not limited to:

    (a)     Whether Defendants engage in unlawful debt collection practices in violation of California Civil Code sections 1788, *et seq.*;

    (b)     Whether Defendants acted knowingly and willfully;

    (c)     Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

    (d)     The appropriate amount of damages and statutory penalties resulting from Defendants' violations of California law.

38.     There is a well-defined community of interest in the litigation and the class is readily ascertainable:

    (a)     <u>Numerosity</u>:  Upon information and belief, the members of the class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

///

Page 8

(b) <u>Typicality</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom she has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members as demonstrated herein.

(c) <u>Adequacy</u>:  Plaintiff is qualified to, and will, fairly and adequately, protect the interests of each class member with whom she has a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts, or differences with any class member.  Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement.  Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d) <u>Superiority</u>:  The nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

(e) <u>Public Policy Considerations</u>: Many of the proposed class members may not know that Defendants' contact with them is improper.  In addition, even if they knew, they have little incentive to pursue an action for injunctive relief or damages because of the relatively low individual amounts at stake.  Obtaining representation would be difficult for the same reason. A class action, however, provides the necessary incentives and allows all class members to obtain relief at once.

**FIRST CAUSE OF ACTION**

**Violation of California Civil Code §§ 1788, *et seq.***

**(Against All Defendants)**

39.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

40.    Defendants, and each of them, are "debt collector[s]" as defined by California Civil Code section 1788.2(c).  A major component of Defendants' mortgage servicing business entails collecting and processing monthly mortgage payments from borrowers.  Defendants sent correspondence to Plaintiff and other borrowers containing the following disclaimer statement: "This is an attempt to collect a debt and any information obtained will be used for that purpose." *See* Exhibit A.

41.    California Civil Code section 1788.11(d) provides that no debt collector shall collect or attempt to collect a consumer debt by means of "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called."

42.    California Civil Code section 1788.11(e) prohibits "[c]ommunicating, by telephone or in person, with the debtor with such frequency as to be unreasonable, and to constitute harassment to the debtor under the circumstances."

43.    California Civil Code section 1788.17 provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Section 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

44.    15 U.S.C. § 1692e(2)(A) prohibits a debt collector from falsely representing the character, amount, or legal status of any debt.

45.    Defendants, acting as "debt collectors," knowingly and intentionally made improper phone calls to Plaintiff and other class members for the purpose of harassing in connection with their "consumer debt."

46.    First, between April 2019 and September 2019, Plaintiff received hundreds of harassing phone calls from Defendants.  Defendants called Plaintiff's cellular phone

approximately 10 to 15 times per day, in 5- to 10-minute intervals.  When Plaintiff picked up her phone, Defendants used intimidating language and demanded payments, including payments that had either already been paid or were not yet due.  Defendants also called Plaintiff's home phone number and left her at least 32 voicemail messages between April 2019 and July 2019.

47.     Second, if Plaintiff did not answer her cellular phone, Defendants would regularly hang up the phone and deliberately fail to leave a voicemail message.  Instead of leaving a voicemail message in order to communicate with Plaintiff, Defendants repeatedly called her back.  Thus, these calls were not intended to make contact with Plaintiff in order to speak with her or communicate information to her, but instead were simply intended to annoy, harass, and/or intimidate Plaintiff.

48.     Furthermore, on or around July 26, 2019, Defendants issued Plaintiff a Notice of Default that stated Plaintiff owed $1,439.15 for June 2019 and July 2019 installment payments, plus late charges, and that she could cure the default by sending a cashier's check or money order for that amount by September 9, 2019.  On August 8, 2019, Defendants' representative, Allyson Hillard, confirmed via email that Defendants had received Plaintiff's payment of $650 for the June 2019 installment payment and that the amount remaining to cure the Notice of Default was $789.15.  On August 28th, Plaintiff authorized a payment of $800 to Defendants for the remainder of her balance.  Despite receiving an early payment of more than the minimum amount required to cure the default, Defendants called and emailed Plaintiff on August 28, August 29, and September 5, 2019 demanding that she call them back and make plans to bring her account up to date.

49.     Moreover, Defendants annoyed and harassed Plaintiff by calling at intentionally inconvenient times, as early as 7:30 a.m.

50.     During the relevant time period, Plaintiff repeatedly asked Defendants to stop calling and harassing her, both over the phone and via email, to no avail.

51.     Defendants, acting as "debt collectors," willfully and knowingly harassed and annoyed, and continue to harass and annoy Plaintiff and class members with these unwanted calls, despite requests by Plaintiff and class members to stop the harassing calls.

52.     By engaging in the unlawful debt collection practices alleged above, Defendants have violated the Rosenthal Act in multiple ways, including, without limitation, violating sections 1788.11(d), (e), by "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called" and "[c]ommunicating, by telephone . . . with the debtor with such frequency as to be unreasonable and to constitute and harassment of the debtor under the circumstances." Defendants' unfair or deceptive practices have caused Plaintiff and class members throughout California to incur damages and other injuries, and have harmed the public interest in maintaining confidence in the consumer banking and credit system, which is the very reason that the California Legislature enacted the Rosenthal Act.

53.     Under the circumstances, the injury to Plaintiff and class members greatly outweighs any alleged countervailing benefits.

54.     As a direct and proximate cause of Defendants' violation of the Rosenthal Fair Debt Collection Practices Act, Plaintiff and class members have suffered and will continue to suffer actual damages.  Plaintiff suffered emotional distress and incurred monetary damages, including, but not limited to, cellular phone charges.  In addition, Plaintiff spent many hours each month sending numerous emails asking Defendants to stop contacting her, speaking to Defendants on the phone, and otherwise dealing with Defendants' harassing treatment.  Plaintiff is a self-employed delivery driver and had to use her regular business hours to deal with the harassment by Defendants, and, as a result, suffered from lost potential income.

55.     Pursuant to California Civil Code section 1788.30(b) and section 1692k of, Title 15 of the United States Code, Plaintiff and other class members are entitled to actual damages (including economic damages and pain and suffering) as well as statutory penalties.

56.     Plaintiff, on behalf of herself and all others similarly situated, further requests injunctive relief, and all other relief allowed, plus interest, attorney's fees, and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. section 1021.5.

///

///

///

**SECOND CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200,** *et seq.* **–**

**Unlawful Business Practices**

**(Against all Defendants)**

57.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

58.     Defendants are "persons" as defined by California Business & Professions Code section 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

59.     Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

60.     Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq.*

61.     A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

        (a)     Subjecting Plaintiff and other class members to harassing telephone calls in violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code sections 1788, *et seq*, as alleged herein.

62.     As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

63.     Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to damages resulting from those violations including,

1    but not limited to, disgorgement of fees and interest and other benefits received by Defendants

2    from retaining money belonging to Plaintiff and class members; and an award of attorney's fees

3    pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and

4    award of costs.

5                            **THIRD CAUSE OF ACTION**

6        **Violation of California Business & Professions Code §§ 17200, *et seq.* –**

7                            **Unfair Business Practices**

8                            **(Against all Defendants)**

9           64.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each

10   and every allegation set forth above.

11          65.     Defendants are "persons" as defined by California Business & Professions Code

12   section 17201, as they are corporations, firms, partnerships, joint stock companies, and/or

13   associations.

14          66.     Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

15   unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has

16   suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.

17   Plaintiff seeks to enforce important rights affecting the public interest within the meaning of

18   Code of Civil Procedure section 1021.5.

19          67.     Defendants' activities, namely Defendants' company-wide practice of subjecting

20   their debtors to harassing phone calls, has caused harm to Plaintiff and class members.  Thus,

21   Defendants' practice of harassing their debtors constitutes an unfair business practice in

22   violation of California Business & Professions Code sections 17200, *et seq.*

23          68.     A violation of California Business & Professions Code sections 17200, *et seq.*

24   may be predicated on any unfair business practice.  In the instant case, Defendants' practices

25   have violated the Rosenthal Fair Debt Collection Practices Act and constitute acts against the

26   public policy behind this law.

27          69.     Pursuant to California Business & Professions Code sections 17200, *et seq.*,

28   Plaintiff and class members are entitled to damages resulting from those violations including,

but not limited to, disgorgement of fees and interest and other benefits received by Defendants from retaining money belonging to Plaintiff and class members; and an award of attorney's fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and award of costs.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

1. Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

2. For damages, penalties, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

### Class certification

3. That this case be certified as a class action;

4. That Plaintiff be appointed as the representative of the Class;

5. That counsel for Plaintiff to be appointed as class counsel.

### As to the First Cause of Action

6. That the Court declare, adjudge, and decree that Defendants violated California Civil Code sections 1788, *et seq.* because Defendants engage in unlawful debt collection practices;

7. An Order awarding to Plaintiff and the class actual and/or statutory damages, including statutory penalties and interest, in an amount to be proven at trial (as provided by California Civil Code sections 1788.30(a) and 1788.30(b));

8. For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

9. An award of attorneys' fees and costs, as permitted by law;

///

CLASS ACTION COMPLAINT

EXHIBIT 1
36

10.     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1788.30(c); and

11.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

12.     That the Court declare, adjudge, and decree that Defendants conduct of subjecting their debtors unlawful debt collection practices including harassing phone calls constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

13.     For restitution of fees and interests and other benefits received by Defendants from retaining money belonging to Plaintiff and class members and prejudgment interest from the day such amounts were paid;

14.     For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.;*

15.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1788.30(c); and

16.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

17.     That the Court declare, adjudge, and decree that Defendants conduct of subjecting their debtors to unlawful debt collection practices including harassing phone calls constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

18.     For restitution of fees and interests and other benefits received by Defendants from retaining money belonging to Plaintiff and class members and prejudgment interest from the day such amounts were paid;

CLASS ACTION COMPLAINT
EXHIBIT 1
37

1    19.    For the appointment of a receiver to receive, manage, and distribute any and all

2   funds disgorged from Defendants and determined to have been wrongfully acquired by

3   Defendants as a result of violations of California Business & Professions Code sections 17200,

4   *et seq.;*

5    20.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

6   California Code of Civil Procedure section 1788.30(c); and

7    21.    For such other and further relief as the Court may deem equitable and

8   appropriate.

9

10   Dated:  November 18, 2022                    Respectfully submitted,

11                                               Capstone Law APC

12

13                                       By: _____

14                                               Mark A. Ozzello
                                                 Brandon K. Brouillette
15                                               Joseph Hakakian

16                                               Attorneys for Plaintiff Kathy Tatick

17

18

19

20

21

22

23

24

25

26

27

28



# EXHIBIT "A"

EXHIBIT 1
39



**elizabethrudolph@21stmortgage.com**
To: ktatick@yahoo.com

Tue, May 21, 2019 at 9:21 AM 

This is Elizabeth with 21st Mortgage. I am the direct supervisor over the account. Please return my call to 1-800-955-0021 extension 2193.

Thank you,
**Elizabeth Rudolph | 21ST Mortgage**
Senior Financial Counselor - Servicing Department
620 Market Street One Center Square | Knoxville, TN 37902
☎ 800-955-0021 ext. 2193 | 7 866-231-4851 | ⌐ www.21stmortgage.com
✉ElizabethRudolph@21stMortgage.com
Our office hours are 8:00am to 9:00pm EST Monday - Thursday and 8:00am to 8:00pm EST on Fridays.

Please Note: This is an attempt to collect a debt and any information obtained will be used for that purpose

Please be advised further that this letter constitutes neither demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to automatic stay of section 362 of the United States Bankruptcy Code.

For Colorado Residents, please note 21st Mortgage's Colorado office phone number is (970) 475-0008, and its office address is 455 W. Service Road; Evans, CO 80620. PLEASE SEND PAYMENTS TO: PO Box 148 Memphis, TN 38101.

For Tennessee Residents, 21st Mortgage is licensed by the Collection Service Board of the Department of Commerce and Insurance.

CONFIDENTIALITY NOTICE
This electronic mail transmission and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged. This information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, any disclosure, copying, distribution or action taken in reliance on the contents of the information contained in this transmission is strictly prohibited.

   • • •

EXHIBIT 1
40

# Exhibit 2

EXHIBIT 2
41

1 RICHARD B. HOPKINS, II (SBN 190108)
RHokins@maynardcooper.com
2 MAYNARD COOPER & GALE LLP
10100 Santa Monica Boulevard, Suite 550
3 Los Angeles, CA 90067
Telephone:  310-596-4500
4
THOMAS W. THAGARD (AL Bar No. 2000-D62T)*
5 tthagard@maynardcooper.com
JAMES C. LESTER (AL Bar No. 4477-M68L)*
6 jlester@maynardcooper.com
S. REEVES JORDAN (NY Bar No. 5639315)*
7 rejordan@maynardcooper.com
MAYNARD, COOPER & GALE, P.C.
8 1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203
9 Telephone: (205) 254-1000
*Pro Hac Vice Application Forthcoming
10
Attorneys for Defendant
11 21st Mortgage Corporation

12

13 **UNITED STATES DISTRICT COURT**

14 **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15 KATHY TATICK, individually, and on behalf of other members of the general public similarly situated,<br>16<br><br>17 Plaintiffs,<br><br>18 vs.<br><br>19 21st MORTGAGE CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br>20<br><br>21 Defendants. | Case No.<br><br>**DECLARATION OF JEFF WARKINS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL**<br><br><br>Complaint Filed:  November 18, 2022 |

22

23

24

25

26

27

28
DECLARATION OF JEFF WARKINS IN SUPPORT OF NOTICE OF REMOVAL

Case No.

EXHIBIT 2
42

1    I, Jeff Warkins, declare:

2    1.    I am Associate General Counsel for 21st Mortgage Corporation ("21st

3  Mortgage").   I am over 21 years old and have personal knowledge of the

4  information in this Declaration in my capacity as Associate General Counsel for

5  21st Mortgage, based on my review of company records, and my investigation into

6  the matters addressed herein.  If called to testify, I would and could competently

7  testify to the facts in this Declaration.

8    2.    21st Mortgage is a Delaware corporation with its principal place of

9  business in Knoxville, Tennessee.

10   3.    Between November 18, 2018 and November 18, 2022, 21st Mortgage

11 placed debt collection calls to more than 200 borrowers in California who were

12 past due on their monthly payments for manufactured home loans secured by real

13 property.

14

15   I declare under penalty of perjury that the foregoing statements are true and

16 correct.  Executed on January 16, 2023, at Knoxville, Tennessee.

17

18

19

20    _____

21    Jeff Warkins

22

23

24

25

26

27

28

---

2

DECLARATION OF JEFF WARKINS IN SUPPORT OF NOTICE OF
REMOVAL
EXHIBIT 2

## CERTIFICATE OF SERVICE

### *Kathy Tatick, et al. v. 21st Mortgage Corporation, et al.*
### *Case No.*

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made.  I am over the age of 18 and not a party to the within actions; my business address is 10100 Santa Monica Blvd., Ste. 550, Los Angeles, CA 90067.

On **January 20, 2023**, I served the document(s) entitled, DEFENDANT 21ST MORTGAGE CORPORATION'S NOTICE OF REMOVAL on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

☒ **(BY MAIL)**:   I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ **(BY ELECTRONIC MAIL)**:     By transmitting a true copy thereof to the electronic mail addresses as indicated below.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **January 20, 2023**, at Los Angeles, California.

_____
Lea Borys

1020793\304578071.v1

1

## **SERVICE LIST**

2

3

***Kathy Tatick, et al. v. 21st Mortgage Corporation, et al.***
***Case No.***

4

Mark A. Ozzello

5

Mark.Ozzello@capstonelawyers.com
Brandon K. Brouillette

6

Brandon.Brouillette@capstonelawyers.com

7

Joseph Hakakian
Joseph.Hakakian@capstonelawyers.com

8

CAPSTONE LAW APC

9

1875 Century Park East, Suite 1000
Los Angeles, California 90067

10

Telephone: (310) 556-4811

11

Facsimile: (310) 943-0396

12

*Attorneys for Plaintiffs,*

13

*Kathy Tatick, individually, and on behalf*
*of other members of the general public*

14

*similarly situated*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1020793\304578071.v1